IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

FOREST GUARDIANS, a non-profit New Mexico
corporation, and DEFENDERS OF WILDLIFE, a
non-profit Washington, D. C. corporation,

      Plaintiffs,

  vs.                                                                                            No. CIV 97-0453 JC/DJS

BRUCE BABBITT, Secretary of the Interior,

      Defendant.

**MEMORANDUM OPINION AND ORDER**

THIS MATTER came on for consideration of Plaintiffs' Motion for Review of Agency Decision (Docket No. 8) and Defendant's Motion for Stay (Docket No. 10), both filed July 14, 1997. The Court has reviewed the motions, the memoranda submitted by the parties, the relevant authorities, and heard oral argument on October 14, 1997. The Court finds that Plaintiffs' motion is not well taken and will be denied. The Court further finds that Defendant's Motion for Stay is well taken and will be granted.

**Background**

The Rio Grande silvery minnow (Hybognathus amarus) is a fish, measuring 3 ½ inches, that was historically one of the most abundant and widespread fishes in the Rio Grande basin. See Final Rule To List the Rio Grande Silvery Minnow as an Endangered Species, 59 Fed. Reg. 36,988 (1994). Over the last 20 to 30 years, the silvery minnow has dwindled to 5% of its historic range, and now

lives along a 170 mile stretch of the Rio Grande, from the Cochiti Dam to the headwaters of Elephant Butte Reservoir.  Id.

As a result of the minnow's thinning population, the Fish and Wildlife Service (the "Service") issued a proposed rule to designate the minnow as endangered on March 1, 1993.  Under the Endangered Species Act ("ESA"), the Service then had one year to issue a final rule listing the minnow as endangered, which it did on July 20, 1994.  See Id. at 36,989-90.

Following the minnow's listing, the Service came under a second statutory duty to designate a critical habitat for the minnow.  See 16 U.S.C. § 1533(a)(3)(A).  Under the ESA, if the critical habitat is not determinable at the time the species is listed as endangered, the Service has one year to make the habitat designation.  See 16 U.S.C. § 1533(b)(6)(C)(ii).  The one-year window extends from the date of the proposed final listing.  Thus, because the original date of proposed final listing for the silvery minnow was March 1, 1994, the Service was under a statutory deadline of March 1, 1995 to designate the critical habitat for the minnow.  The heart of this suit lies in the Service's failure to make the critical habitat designation within the statutory time line.

Plaintiffs urge the Court to compel the Service to designate a critical habitat for the silvery minnow within 30 days.  The Secretary of Interior (the "Secretary") counters that 30 days is an unreasonably short period of time in light of recent budgetary constraints.  The Secretary moves for the Court to stay this case until October 30, 1999, with periodic reports to the Court on February 1, 1998, October 30, 1998 and February 1, 1999.

The budgetary constraints the Secretary complains of date back to Public Law 104-6, which took effect on April 10, 1995.  See Final Listing Priority Guidance for Fiscal Year 1997, 61 Fed. Reg. 64,475, 64,476-78 (1996).  Under Public Law 104-6, Congress rescinded $1.5 million from the

Service's $8 million endangered species listing budget. Public Law 104-6 also placed a moratorium on the use of the appropriated funds to make final species listings, or critical habitat designations. From October 1, 1995 through April 26, 1996, funding for the Service's endangered species programs came through a series of continuing resolutions, each of which carried over the moratorium against final species listings and critical habitat designations. Id. The net effect of the moratorium--and reduction in funding--was that the Service's listing programs were essentially shut down for an entire year.

On April 26, 1996, Congress authorized the President to waive the moratorium, which he did as part of the Omnibus Budget Reconciliation Act of 1996. Following the waiver, the Service reactivated the endangered species listing program and operated with the remains of the $4 million FY 1996 budget. At that time, the Service faced a backlog of 243 proposed species listings, as well as the time and expense of reactivating a program that had been shut down for over a year.

In FY 1997, the Service again faced budgetary constraints. Under Public Law 104-208, Congress appropriated $5 million for the endangered species listing programs in FY 1997, a figure well below the $7.483 million requested by the President and the budgets to which the Service had become accustomed prior to the spending moratorium of FY 1996.

As a result of the limited funding--and the species backlog--the Service implemented a "listing priority guidance" plan in May of 1996. The goal of the Secretary's plan was to focus the limited resources available to those actions that would provide the greatest conservation benefit to the species most in need of the ESA's protection. The listing priority plan consists of four tiers:

>Tier 1--Emergency Listing Actions--Listings for those species that face an imminent risk of extinction;
>
>Tier 2--Processing Final Decisions on Proposed Listings;
>
>Tier 3--Resolving the Conservation Status of Candidate Species and Processing Administrative Findings on Petitions to Add Species to the Lists or Reclassify Threatened Species to Endangered Status;
>
>Tier 4--Processing Critical Habitat Determinations and Processing Delistings or Reclassifications.

Tier 1 listings receive the highest priority, and Tier 4 listings receive the least. Since the listing priority plan's implementation in May of 1996, Tier 4 determinations have not been made.

Plaintiffs argue that the Secretary's listing priority plan does not negate the ESA's mandatory time limit for critical habitat designations. Plaintiffs highlight that under the Secretary's plan, no deadlines are established under any of the four tiers--a fact that conflicts with the strict deadlines of the ESA. The Secretary counters that there is not enough money to comply with all of the ESA's requirements, especially the critical habitat designations.

**Analysis**

From the foregoing discussion, it is clear that the ESA has been violated in this case--the Secretary did not designate a critical habitat for the silvery minnow by the March 3, 1995 deadline. The Court, however, recognizes the severe budgetary constraints, and consequential species backlog, the Secretary faced following the 1996 spending moratorium. The Court is persuaded by the recent cases that have deferred to the Secretary's listing priority system. See Board of County Comm'rs v. United States Fish and Wildlife Service, No. CIV 93-0730-HB (D.N.M. Aug. 21, 1997); Environmental Defense Ctr. v. Babbitt, 73 F.3d 867 (9th Cir. 1995) (the Secretary could wait on a final listing determination for the California red-legged frog "until a reasonable time after the

appropriated funds were made available."); Sierra Club v. Babbitt, 948 F. Supp. 56 (E.D. Cal. 1996) (recognizing that due to past budgetary constraints, it would be impossible for the Secretary to comply with all the ESA dictates and allowing the Secretary to continue with listing guidelines); Environmental Defense Ctr. v. Babbitt, No. CIV 94-5561 ER (C.D. Cal. May 23, 1996) (deferring to the FWS listing program); and Environmental Defense Ctr. v. Babbitt, No. CIV 96-6987 (C.D. Cal. Apr. 7, 1997) (granting Secretary's motion to stay, and thereby extending the time deadline for designation of a critical habitat for plants).

The Court is also moved by the prudential argument advanced by the Secretary. If the Service is forced to designate a critical habitat for the silvery minnow in the wake of the budgetary constraints, other species--such as the San Xavier talus snail, Jaguar, Parish's alkali grass, and Arkansas River Shiner--may lose-out on the ESA's protections. (Def.'s Mem. in Supp. of Motion to Stay at 14-15.) The silvery minnow has already received significant protections by being listed as endangered. The Court does not feel the silvery minnow should suddenly move to the head of the line for habitat designation while other species are struggling for their very survival and have no ESA protections. Deferring to the Secretary's listing priority is also consistent with the overarching purposes of the ESA--maximizing species protection and reversing the trends of extinction. See 16 U.S.C. § 1531. Surely the critical habitat designation for the silvery minnow does not justify the possible extinction of countless other species in New Mexico and throughout the Nation. Cf. Tennessee Valley Authority v. Hill, 437 U.S. 153, 172 (1978).

The Court is unpersuaded by the expired listing priority argument advanced by Plaintiffs during oral argument. The Service is currently operating under a continuing resolution of FY 1997 funding levels. Consequently, the Service is continuing the FY 1997 listing priority guidance until

the FY 1998 appropriation is enacted.  (Ms. Jamie Rappaport Clark, Director of the Fish and Wildlife Service, Aff. ¶¶ 2-4.)  The Court will defer to the Service's continuation of the FY 1997 listing guidance until the 1998 guidance is in place.  The Court will also defer to the Service's subsequent listing prioritization implemented to counteract the previous budgetary crises and spending moratorium.  The Court will stay enforcement of Plaintiffs' action under the citizen suit provision of the ESA, 16 U.S.C. § 1540(g)(1), as well as under the Administrative Procedure Act, 5 U.S.C. § 706(1) until October 30, 1999.  Defendants will be ordered to provide the Court with status updates on the silvery minnow's critical habitat designation on January 30, 1998, October 30, 1998 and February 1, 1999.  The Court admonishes the Secretary to ensure the critical habitat designation for the silvery minnow as soon as fiscally possible.

Wherefore,

IT IS HEREBY ORDERED that Plaintiffs' Motion For Review of Agency Decision is **denied**.  Defendant's Motion to Stay is **granted** until October 30, 1999.

IT IS FURTHER ORDERED that Defendants provide the Court with status updates on the silvery minnow's critical habitat designation on January 30, 1998, October 30, 1998, and February 1, 1999.

DATED this 23rd day of October, 1997.

_____
**CHIEF UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiffs:          Matthew G. Kenna
                                 Durango, Colorado

Counsel for Defendant:           John W. Zavitz
                                 Assistant United States Attorney
                                 United States Attorney's Office
                                 District of New Mexico
                                 Albuquerque, New Mexico

                                 Warigia Bowman
                                 United States Department of Justice
                                 Environmental and Natural Resources Division
                                 Washington, D. C.

                                 Lois J. Schiffer
                                 United States Department of Justice
                                 Environmental Enforcement Section
                                 Washington, D. C.